UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-22862-CIV-KING

GROUP USA, INC., a New Jersey corporation,

    Plaintiff,

v.

DOLPHIN MALL ASSOCIATES, LLC,
a Delaware limited liability company, AND
THE TAUBMAN COMPANY, LLC, a
Delaware limited liability company,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS

**THIS CAUSE** is before the Court upon the cross-motions for summary judgment filed by Plaintiff Group USA, Inc. (DE #36), and Defendants Dolphin Mall Associates, LLC and the Taubman Company, LLC (DE #40). The Court is fully briefed on the matter.[1]

### I. BACKGROUND

This is an action for declaratory relief, in which the Parties seek declaration of their rights under a commercial lease. On August 6, 2010, both Parties filed Complaints seeking

---

[1] Pursuant to a briefing schedule set by the Court (DE #23; DE #30), Plaintiff filed its Motion for Summary Judgment and Support Memorandum of Law (DE #36) November 29, 2010; Defendants filed a Response to Group USA, Inc's Motion for Summary Judgment and Consolidated Cross-Motion for Summary Judgment (DE #40) December 14, 2010; and Plaintiff filed a Reply Brief (DE #42) December 20, 2010.

declaratory judgment against the other, resulting in two pending cases regarding the same dispute: *Group USA, Inc. v. Dolphin Mall Associates, LLC*, No. 10-22862-CIV-JORDAN, and *Dolphin Mall Associates, LLC v. Group USA*, No. 10-22584-CIV-KING. *Group USA, Inc. v. Dolphin Mall Associates* was transferred to this Court, and the cases were consolidated. (D.E. #9, 12).

The material facts are not in dispute. Defendant Dolphin Mall Associates, LLC is the owner and landlord of property in Miami-Dade County, commonly known as Dolphin Mall. (D.E. #38, ¶9). Plaintiff is a tenant at Dolphin Mall (D.E. #38, ¶9), and the Parties' relationship is governed by a written lease ("the lease"). (D.E. #1, Exh. 1). Pursuant to Section 4.1 of the lease, the lease term commenced on March 1, 2001 and the original term of the lease expires on February 28, 2011. (D.E. #1, Exh. 1). Section 4.2 of the lease provided the tenant, Plaintiff, the option to renew the lease for two additional ten-year periods by giving the landlord written notice at least one year before the expiration of the current term. *Id.*

The first lease term ends February 28, 2011, so the notice to renew for a second term was due February 28, 2010. (D.E. #38, ¶15). Plaintiff intended to renew the lease, but inadvertently missed the deadline to do so. (D.E. #1, ¶17). Plaintiff's Vice President of Finance wrote the incorrect commencement date on a "Lease Excerpt," a type of document he routinely relied on for determining whether Group USA would renew its various leases. (D.E. #38, ¶¶26–9). Accordingly, the Vice President of Finance was unaware that the

renewal notice was due February 28, 2010.[2] *Id.*

Four months after the deadline, Defendant sent Plaintiff a letter stating that the lease "expires by its terms February 28, 2011, . . . [and that] your Lease will not be renewed or extended by the Landlord." (D.E. #1, ¶16). Plaintiff explained by phone and in several letters to Defendants that it missed the deadline by mistake, and purported to give notice of its intention to renew the lease on July 7, 2010. (D.E. #38, ¶¶41–3). Defendant did not change its position that the lease terminates by its terms on February 28, 2011. *Id.*, 44–6. Plaintiff has timely paid, and continues to timely pay, all rent due under the lease. *Id.*, ¶13.

Plaintiff and Defendant both seek resolution of the same issue—when the lease terminates. Plaintiff seeks a declaratory decree ordering that "the Lease is deemed renewed and the Landlord must honor Group USA's exercise, via Group USA's written notice to [Defendants] dated July 7, 2010, of Group USA's option to renew and extend the Lease for an additional (10) years." (D.E. #36 at 20). Defendants seek "a declaration that the lease expires February 28, 2011 and cannot be removed." (DE #40 at 20).

---

[2]The date inserted in the lease document reflected the date the Lease was executed, July 8, 1997, rather than the date the lease commenced, March 1, 2001. (D.E. #38, ¶26). When the Vice President of Finance reviewed the Lease Excerpt in late 2009, he believed the lease had commenced in 1997, and therefore that Group USA had already exercised its first ten-year Renewal Option in 2007. *Id.*, ¶¶26–9. Accordingly, he believed the Lease was operating within the first option period, which would mean no renewal notice was required for another seven years. *Id.*, ¶29.

3

## II.  ANALYSIS

Plaintiff admits that its renewal notice was untimely, but argues that equity may accord it relief from the consequences of the failure to give timely notice of renewal. Defendants argue in response that Florida law has established very narrow grounds for equitable relief when a tenant fails to timely renew a lease, and none of those grounds are applicable here.

In the context of lease renewal, the general rule is "that the giving of timely notice, in accordance with the provisions of the lease, is a condition precedent to the lessee's right to renew." *Thrifty Dutchman, Inc. v. Florida Supermkts., Inc.*, 541 So. 2d 634, 636 (Fla. 3d DCA 1989). "The rule is grounded in the principle that time is of the essence in an option contract and that a notice requirement is strictly construed." *Id.* However, it is well-settled in Florida that equity will accord relief for the failure to give timely notice of renewal of a lease "when such failure results from accident, fraud, surprise, or mistake, and there are other special circumstances which may warrant a court of equity in granting relief against the consequences of the lessee's failure to notify the lessor." *Dugan v. Haige*, 54 So. 2d 201, 202 (Fla. 1951). However, equity will intervene only if a three-part framework is also satisfied: "(1) the tenant's delay in giving notice of renewal was slight, (2) the delay did not prejudice the landlord, and (3) failure to grant relief would cause the tenant unconscionable hardship." *Friendship Park Prop. Corp. v. Shaw*, 505 So. 2d 456, 458 (Fla. 1st DCA 1987).

Plaintiff argues that its "mistake" in relying on an inaccurate date in a Lease Excerpt

brings it within the rule established by *Dugan v. Haige*. Plaintiff further argues it has met the requirements of the three-part framework in *Friendship Park*. According to Plaintiff, the delay in giving notice of renewal was slight because "notice was still provided substantially before the end of the lease term" (approximately eight months) and "immediately upon Group USA learning of its mistake, and in the context of Group USA's long-term Lease providing for a lease duration of up to thirty (30) years." (D.E. #36 at 4). Plaintiff argues Defendants were not prejudiced by the delay because Defendants did not commit to make the premises available to a new tenant upon expiration of the lease. *Id.* at 4–5. However, Plaintiff claims it "is likely to suffer the most significant, most draconian, most unconscionable hardship imaginable – i.e., potential insolvency and the loss of its entire business – if the Lease is not renewed." *Id.* at 5.

While Plaintiff may have made an honest mistake in relying on an incorrect date contained in an internal document, this is not the type of "mistake" contemplated by the rule in *Dugan v. Haige*. *Dugan* requires "special circumstances" warranting equitable relief, and a review of the case law reveals that such "special circumstances" are absent in this case. In *Dugan* itself, the lessees were granted equitable relief after they gave notice of intent to renew their five-year lease eighteen days late. 54 So. 2d 201, 202. The "special circumstance" in that case was that the only copy of the lease in the lessees' possession indicated a fifteen-year term. *Id.* The First District Court of Appeal of Florida has excused a six-week delay in giving notice where the tenants orally told the landlord of their intent to

renew, the landlord responded that nothing need be submitted in writing, and then continued to accept rent payments for an additional thirty-three months. *Ledford v. Skinner*, 328 So. 2d 219, 220, 222 (Fla. 1st DCA 1976). Similarly, the Fourth District Court of Appeal has held the illness of the president of a corporate tenant was a "special circumstance" which warranted excusing an eight-day delay in renewal of a lease option. *Inv. Builders of Florida, Inc. v. S.U.S. Food Mkt. Invs., Inc.*, 753 So. 2d 759, 759–60 (Fla. 4th DCA 2000).

In sum, Florida courts will grant equitable relief in cases where a "mistake" is accompanied by "special circumstances" that result from the actions of the landlord, or are otherwise not the fault of the tenant. On the other hand, Florida courts have refused to grant equitable relief where the "failure to give notice was due to the negligence of the lessee, unaccompanied by fraud, accident, surprise or mistake." *Thrifty Dutchman, Inc. v. Florida Supermkts., Inc.*, 541 So. 2d 634, 636 (Fla. 3d DCA 1989) (denying equitable relief where tenant failed to mail notice on time). *See also Friendship Park*, 505 So. 2d at 458 (affirming denial of equitable relief where tenant's renewal notice was six months late due to tenant's negligence). The "special circumstances" requirement marks the difference between a mistake that may be relieved by equity and a mistake that may not. "Equity will not relieve against a mistake of one guilty of culpable negligence, neither will it relieve against a mistake that could have been avoided by caution. . . [I]f one's mistake is due to his own negligence and lack of foresight and there is absence of fraud or imposition, equity will not relieve him." *Graham v. Clyde*, 61 So. 2d 656, 657 (Fla. 1952). Here, Plaintiff's "mistake"

was the insertion of an incorrect date on an internal document, and its later reliance on the incorrect date. This mistake was not accompanied by the type of "special circumstances" recognized by Florida courts as warranting equitable relief.

Plaintiff has failed to satisfy the three-part framework discussed in *Friendship Park*. While Plaintiff acted immediately upon learning of its failure to timely renew, the fact remains notice was not given until over four months after the deadline. Florida courts have held delays similar in duration and even significantly shorter delays rendered a renewal notice "untimely and ineffective." *Douglass v. Jones*, 422 So. 2d 352, 354–5 (Fla. 5th DCA 1982) (five-day delay); *Friendship Park*, 505 So. 2d at 458–9 (six-month delay). The cases excusing delayed exercise of a lease extension involve delays significantly shorter than the 129 delay in the instant case. *See Dugan*, 54 So. 2d at 202 (eighteen days); *Inv. Builders of Florida*, 753 So. 2d at 759 (eight-day delay); *Ledford v. Skinner*, 328 So. 2d 219, 220, 222 (Fla. 1st DCA 1976) (six-week delay). The delay in the instant case is not "slight," and "delay alone can be sufficient to deny equitable relief." *Friendship Park*, 505 So. 2d at 458 (affirming trial court's denial of equitable relief despite finding that denial would result in unconscionable hardship to tenant).

Furthermore, even if the delay did not prejudice Defendants, Plaintiff has failed to show that denial of equitable relief would cause it "unconscionable hardship." Plaintiff claims that potential "severe financial loss" by the tenant rises to the level of "unconscionable hardship," and relies on *Holmes Reg'l Enters., Inc. v. Advanced Med.*

*Diagnostics Corp.*, 582 So. 2d 822, 823 (Fla. 5th DCA 1991). However, *Holmes* contains no factual background or reasoning as to the affirmance of the trial court's order granting equitable relief; instead, the opinion focuses on the appropriateness of an award of attorneys' fees. The case in inapposite. Plaintiff will likely suffer some hardship as a result of either renegotiating lease terms with Defendants or moving to a new location, but the enforcement of the terms of a valid lease cannot be said to be "unconscionable."

Accordingly, the Court finds the Parties' lease expires by its terms on February 28, 2011, and Plaintiff Group USA, Inc. has no rights under the lease after such date.

### III.   CONCLUSION

Based on the foregoing reasons and a careful review of the record, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1. Plaintiff Group USA, Inc.'s Motion for Summary Judgment **(D.E. #36)** is **DENIED.**

2. Defendants' Cross-Motion for Summary Judgment **(D.E. #40)** is **GRANTED.** Judgment **SHALL** be entered in favor of Defendants Dolphin Mall Associates, LLC and The Taubman Company, LLC.

3. Defendants **SHALL** submit a proposed Declaratory Decree and Final Judgment reflecting the findings and rulings contained in this Order, within

**ten (10) days** of the date of this Order.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 19th day of January, 2011.

```
                        /s/ James Lawrence King
                        JAMES LAWRENCE KING
                        U.S. DISTRICT JUDGE
                        SOUTHERN DISTRICT OF FLORIDA
```

cc:

*Attorneys for Plaintiff*

**Robert Thomas Wright, Jr., Esq.**
Stroock Stroock & Lavan
200 S Biscayne Boulevard
Suite 3100 Wachovia Financial Ctr
Miami, FL 33131-2385

**Irene Oria, Esq.**
Stroock & Stroock & Lavan, LLP
200 South Biscayne Boulevard
Suite 3100
Miami, FL 33131
305-789-9326
Fax: 305-789-9302
Email: ioria@stroock.com

*Attorneys for Defendants*

**Robert Kent Burlington, Esq.**
Coffey Burlington
2699 S Bayshore Drive
Penthouse
Miami, FL 33133
305-858-2900
Fax: 858-5261
Email: rburlington@coffeyburlington.com

**Daniel Frederick Blonsky, Esq.**
Coffey Burlington

2699 S Bayshore Drive
Penthouse
Miami, FL 33133

305-858-2900
Fax: 305-858-5261
Email: dblonsky@coffeyburlington.com